IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JUDY NEWMAN and DIANA SAXTON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-05-667 |
| | § | |
| COLLEGE OF THE MAINLAND and | § | |
| JERRY STEPHENS, | § | |
| | § | |
| Defendants. | § | |

**ORDER DENYING DEFENDANT COLLEGE OF THE MAINLAND'S MOTION FOR SUMMARY JUDGMENT IN PART AND GRANTING DEFENDANT COLLEGE OF THE MAINLAND'S MOTION FOR SUMMARY JUDGMENT IN PART**

Plaintiffs Judy Newman and Diana Saxton ("Plaintiffs") bring this action against Defendant College of the Mainland ("COM") and Defendant Jerry Stephens ("Stephens") under Title VII of the Civil Rights Act of 1964. COM filed its Motion for Summary Judgment, and Plaintiffs timely filed their Response. COM filed a Reply in turn, and Plaintiffs filed a Surreply. For the reasons stated below, COM's Motion for Summary Judgment regarding Plaintiffs' hostile work environment claims is respectfully **DENIED**. COM's Motion for Summary Judgment regarding Plaintiffs' retaliation claims is **GRANTED**.[1]

---

[1]The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

Stephens filed a Motion for Summary Judgment for the claims filed against him on November 10, 2006. Plaintiffs Response is not due until after the trial begins. While the Court is not presently addressing the Motion because it is not ripe, the Court likely will not grant the Motion based on the technical procedural aspects discussed in the Motion. However, the Court advises counsel that unless the evidence presented at trial is substantially more outrageous than that presented in the Response, the Court will likely find as a matter of law that it is not "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

1

**I. Background**

Plaintiffs were both part-time police officers hired by COM in 2002. At the time Plaintiffs were hired, the COM police department consisted of five full-time male police officers, including Stephens. The Record indicates that sexual banter was prevalent in the COM police department, though Plaintiffs claim that conversations with sexual overtones "were clearly 'go along, get along,' as this is the type of environment police women can expect when working in a predominantly male world." (Pls.' Resp. to Def.'s Mot. Summ. J. 7 (citing Poindexter Dep. at 99–100; Dowdy Dep. at 23; Stephens Dep. at 31).) Plaintiffs state that Plaintiffs "were subjected to . . . a barrage of unwanted sexual comments and advances by full time police officers employed by [COM]," (Pls.' First Am. Original Compl. ¶ 7), though the bulk of the information in the Record relates to Stephens's behavior toward Plaintiffs.[2] COM concedes that the "COM police department is not necessarily a place for the 'faint of hearing,'" but points to evidence in the Record indicating that Plaintiffs freely participated in sexual banter, which will be discussed below.

Plaintiff Judy Newman ("Newman") claims that she usually left the room when Stephens made offensive comments, or, that she told him, "I don't want to hear this anymore, Jerry [Stephens]." Newman claims that Stephens told her about his prior sexual conquests and that he thinks about her while he "jacks off." The most noteworthy allegation of harassment that Newman makes is that, on

---

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)) (adopting the tort of intentional infliction of emotional distress).

[2]The Record also abounds with information regarding another full-time officer, Kent Dowdy ("Dowdy"), and an additional part-time female officer, Wendy Wall ("Wall"). COM attempts to divert the Court's attention from Dowdy because the Co-Defendant in this case is Stephens, but the Court finds Dowdy's behavior relevant to its determination whether a hostile work environment existed at the COM police department.

the evening on July 22, 2004, Stephens stood two to three inches away from her and said, "You sure are a beautiful woman and I have seen other women as beautiful as you, but there is something about you that makes my dick so fucking hard, I mean it, when I think about you I mean its gets hard as a rock." (Newman Dep. 82.)    Newman claims that, in response, she said, "This is enough," and then left. *Id.*

Plaintiff Diana Saxton ("Saxton") claims that she asked Stephens to "clean up [his] conversation" whenever she found his comments offensive.  Saxton claims Stephens told her she had a "fine ass for a woman her age," described his sexual conquests to her, and asked her to "help him with 'heavy lifting' in the bathroom," and told him "she would have a hard time telling him 'no.'" (Pls.' Resp. to Def.'s Mot. Summ. J. 9 (citing Saxton Dep. at 11–12).)  The most significant harassment Saxton alleges is that Stephens, upon seeing Saxton dressed in casual clothing when she came by the office to get some paperwork, began to moan, and said, "Oh, please, don't move. Please, don't move." Saxton asked, "What are you talking about Jerry [Stephens]?"  Stephens again asked her not to move and said, "I want to see." Then, according to Saxton, he walked over to her and pulled back her blouse with his little finger, saying, "Let me see some skin."  She then told him "Jerry, I am not some loosey-goosey, okay?  I don't know what y'all think I am around here, but I am not a . . . ." (Poindexter Dep. at 110–11.)[3]

Saxton additionally alleges that Dowdy similarly treated her in an unprofessional and disrespectful manner.  Saxton claims that Dowdy constantly asked her about her sex life and that he

---

[3] Lonica Poindexter is the executive director of diversity at COM.  She was responsible for overseeing the investigation of Plaintiffs' allegation when they made formal complaints under COM's Sexual Harassment Policy.  Tapes Poindexter made during her interviews with Plaintiffs were played during Poindexter's deposition testimony.

asked her to set him up with her friends and her daughter. She claims she grew tired of his behavior and tried to schedule her shifts to avoid him. (Poindexter Dep. at 79–88.)

COM claims that Plaintiffs freely engaged in sexual banter with their co-workers, and it points to the deposition testimony of Plaintiffs in support of its claim. Newman testifed that she does not consider all sex talk to be inappropriate, and she admitted to using inappropriate language at work.[4] Saxton admitted that she told Stephens that she learned how to give "blow jobs" on a coke bottle. However, Newman noted that she objects to "the manner in which [sex talk] was done" at the COM police department. (Newman Dep. at 80–81.) And, Saxton testified that, though she did discuss the coke bottle incident, such conversations are commonplace in police departments. (Saxton Dep. at 22.)

Both women claim that they reported the behavior of Stephens and Dowdy to COM's police chief, E.W. "Butch" Carr ("the Chief"). They claim that the Chief told them to "put it in writing,"

---

[4]Defendant implies that Newman's allegations that she was offended by Stephens's behavior are not credible due to her previous line-of-work as an exotic dancer. First, credibility assessments should be made at trial. Second, Newman's previous profession does not automatically immunize her from finding sexually degrading behavior offensive. *Cf. Burns v. McGregor Elec. Indus.*, 989 F.2d 959, 962–63 (8th Cir. 1993) (criticizing the district court for it determination that "a person who would 'appear nude in a national magazine could not be offended by the behavior which took place at the McGregor plant'" (quoting *Burns v. McGregor Elec. Indus.*, 955 F.2d 559, 566 (8th Cir. 1992)).

> The plaintiff's choice to pose for a nude magazine outside work hours is not material to the issue of whether plaintiff found her employer's work-related conduct offensive. This is not a case where Burns posed in provocative and suggestive ways at work. Her private life, regardless how reprehensible the trier of fact might find it to be, did not provide lawful acquiescence to unwanted sexual advances at her work place by her employer. To hold otherwise would be contrary to Title VII's goal of ridding the work place of any kind of unwelcome sexual harassment.

*Id.* at 963.

and took no further action on their complaints.[5] It wasn't until after Wall filed a formal complaint under the COM sexual harassment policy against Dowdy and COM provided a sexual harassment course for the COM police department as part of its response to the complaint that Plaintiffs decided to "put it in writing." Plaintiffs claim that they did not know that COM could not retaliate against them for filing a complaint until after the sexual harassment training. (Pls.' Resp. to Def.'s Mot. Summ. J. at 12–13.)

In 2004, Plaintiffs filed formal complaints with COM alleging Stephens had sexually harassed them. COM investigated the complaints and found Stephens guilty. Plaintiffs filed complaints with the EEOC in 2005, and the EEOC issued them right-to-sue letters. Newman alleges that the environment at COM became increasingly hostile after she filed her formal complaint with COM, and that, due to medical and mental problems associated with the hostile environment, she found it necessary to resign from her position. Saxton claims that COM retaliated against her for filing a complaint by refusing to interview and hire her for a promotion. In addition to the Title VII claims Plaintiffs assert against both Defendants, Plaintiffs assert an Intentional Infliction of Emotional Distress and an Assault and Battery claim against Stephens.

Conversely, COM claims that it took prompt action to resolve the issues raised by Plaintiffs in their formal complaints, including an official finding that Stephens harassed Plaintiffs according to the definition of harassment in COM's policy. COM notes that Plaintiffs both agree the punishment COM imposed on Dowdy after Wall's complaint effectively stopped his harassing

---

[5]In Stephens's deposition testimony, he responded to the question, "So you didn't have a great deal of faith in the Chief acting on – on try to sort out complaints between police officers?" by saying, "Very little to none." (Stephens Dep. at 45.) In fact, Stephens advised Wall to go over the Chief's head if she wanted to make a complaint against Dowdy. (Stephens Dep. at 44.)

behavior, and that Stephens's harassing behavior likewise ceased after COM concluded that he engaged in sexual harassment. Of course, Stephens could not harass Plaintiffs after the punishment for sexual harassment was issued because he was on medical leave for a heart condition and never returned to the COM police department.

## II. Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1956). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The court must view all evidence in the light most favorable to the non-movant. *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003).

If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S. Ct. 2512. Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See id.* at 255, 106 S. Ct. at 2513.

**III. Analysis**

The Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e(a)(1) (2000). Likewise, an employer my not "limit, segregate, or classify [its] employees or applicants form employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his [or her] status as an employee, because of such individual's . . . sex." *Id.* § 2000e(a)(2). There are two categories of sexual harassment claims: (1) *quid pro quo* claims, and (2) hostile work environment claims. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 751, 118 S. Ct. 2257, 2264, 141 L. Ed. 2d 633 (1998); *Jones v. Flagship Intern.*, 793 F.2d 714, 719 (5th Cir. 1986). There are no allegations of *quid pro quo* harassment in the instant case.

In the Fifth Circuit, a plaintiff must establish five elements in order to show that the alleged sexual harassment is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)) (defining "hostile work envirnoment").[6]

> (1) *The employee belongs to a protected group, i.e.*, a simple stipulation that the employee is a man or a woman;
> (2) *The employee was subject to unwelcome sexual harassment, i.e.*, sexual advances, request for sexual favors, and other verbal or physical conduct of a sexual nature that

---

[6]The Court notes that the Fifth Circuit has recently clarified that the appropriate standard for sexual harassment claims is whether the alleged harassment is "severe *or* pervasive," not "severe *and* pervasive." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434–35 (5th Cir. 2005) (noting the previous "inconsistent application of the . . . standard in this circuit" and reaffirming that "the Supreme Court has stated that Title VII provides a legal remedy to victims who establish that the abusive conduct was severe *or* pervasive").

is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee;
(3) *The harassment complained of was based upon sex, i.e.*, that but for the fact of her sex, the plaintiff would not have been the object of harassment;
(4) *The harassment complained of affected a "term, condition or privilege of employment," i.e.*, the sexual harassment must be sufficiently pervasive [or severe] so as to alter the conditions of employment and create an abusive working environment;[7]
(5) *Respondent superior, i.e.*, that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Jones*, 793 F.2d at 719–20; *see also Watts v. Kroger Co.*, 170 F.3d 505, 509 & n.3 (5th Cir. 1999) (noting that if the employee's supervisor is accused on harassment, then the fifth element above does not apply, but that all five elements still apply if a co-worker is accused of harassment). In hostile work environment claims, the employer may raise an affirmative defense, which consists of two prongs: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 2293, 141 L. Ed. 2d 662 (1998); *Watts*, 170 F.3d at 509–10 (quoting the above language). The employer is not entitled to such a defense if the harassment resulted in a tangible employment action. *Id.*

A. *Hostile Work Environment Claims*

As is likely apparent from the above discussion of the facts, the record is abundant with factual nuances regarding the claims against COM that are better left for the trier-of-fact's determination. COM claims that Plaintiffs' contentions are not sufficiently severe or pervasive

---

[7]The Court adds "or severe" to the explanation of prong four in order to comply with the Fifth Circuits Opinion in *Harvill*, which confirmed that "isolated incidents, if egregious, can alter the terms and conditions of employment." *Harvill*, 433 F.3d at 435.

enough to satisfy the abusive environment requirement of the fourth prong of the hostile environment test. *See Jones*, 793 F.2d at 719–20. A Court must consider "the totality of the circumstances including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 369, 126 L. Ed. 2d 295 (1993)). Also, the complained of conduct must be both objectively and subjectively offensive. *See id.* COM cites two Fifth Circuit cases, *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871 (5th Cir. 1999), and *Hockman v. Westward Commnc'ns, L.L.C.*, 407 F.3d 317 (5th Cir. 2005), and presents the Court with a list of the offenses committed by the alleged harasser in each. Then, COM advances its argument that the conduct Plaintiffs complain about in the instant case is not as severe and pervasive as the conduct in the cited cases. In both cases, the Fifth Circuit held that the listed behaviors were not severe and pervasive enough to constitute a hostile work environment as a matter of law.

Plaintiffs rebut by citing caselaw in which the Fifth Circuit upheld a hostile work environment claim based upon facts Plaintiffs claim are not as severe as the facts of the instant case. *See Farpella-Crosby*, 97 F.3d 803 (5th Cir. 1996), and *Sharp v. City of Houston*, 164 F.3d 923 (5th Cir. 1999). The Court notes first that COM relied only on the alleged harassment Plaintiffs endured from Stephens and did not consider the totality of circumstances, namely, the general work environment at the COM police department. Second, the Court finds that this is a highly fact-specific inquiry, and, in this case, it is more appropriate to make the determination whether the environment was objectively and

subjectively hostile and abusive after a trial on the merits.[8]

Because the Court finds that a trial on the merits is necessary in order to determine whether the fourth prong of the test is satisfied, it is unnecessary for the Court to analyze COM's allegations regarding the fifth prong. However, the Court notes that COM's recital of the lengths of time that different employers have taken to respond to complaints that have been considered "prompt" by the Fifth Circuit does not necessarily convince the Court that COM responded promptly in the instant case. The Court must consider the totality of the circumstances in making its promptness determination. If a plaintiff were being subjected to atrocious behavior on a daily basis, even a couple of days may not be prompt enough if the employer were aware of the behavior. In fact, the Court can envision circumstances in which even a few hours may not be prompt enough. Conversely, if the alleged harassment is more sporadic or not as severe, the definition of "prompt" would be longer. In the instant case, summary judgment evidence indicates that the Chief was aware of the behavior long before Plaintiffs decided to "put it in writing," which is when COM took action. If the Court views this evidence in a light most favorable to Plaintiffs, as it is required to do, then it must find that it is possible for the trier-of-fact to determine that the Chief, and thus COM, did not act promptly enough.

Accordingly, COM's Motion for Summary Judgment regarding the hostile work environment

---

[8]While COM does not overtly make allegations regarding the affirmative defense available for hostile work environment claims under *Faragher*, the Court notes that the burden of proof for such a claim does not fall on Plaintiffs, but on COM. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). If COM meant to assert the affirmative defense, it has failed to meet its burden of proof that Plaintiff "failed to take advantage of any preventative or corrective opportunities provided by the employer." *Faragher*, 524 U.S. at 807, 118 S. Ct. at 2293. Deposition testimony indicates that Plaintiffs reported the harassment to their supervisor, which is exactly what the policy requires.

claims is **DENIED**.

B. *Retaliation Claims*

COM also request Summary Judgment on Plaintiffs' retaliation claims. In order to establish a prima facie case in a retaliation claim, each Plaintiff must prove that (1) she engaged in an activity that Title VII protects; (2) the employer carried out an adverse employment action; and (3) a causal nexus exists between the protected activity and the employer's adverse action. *See Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002).

> Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating. To demonstrate causation, an employee must show that "but for" the protected activity, the adverse employment action would not have taken place.

*Id.* (citations omitted). Here, COM does not deny that Plaintiffs filed sexual harassment complaints with their employer, which is a protected activity. COM does, however, contest Plaintiffs' allegations that COM carried out an adverse employment action against either Plaintiff.

1. *Newman*

Newman claims that she was constructively discharged. In the Fifth Circuit, an allegation of constructive discharge requires a finding that the working conditions were "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1980) (quotations and citations omitted). Plaintiffs "'must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.'" *Harvill*, 433 F.3d at 440 (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992)). The following factors have been determined to be

11

relevant in the reasonableness inquiry:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] . . . .

*Id.* (alteration in original) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)). COM contends that Newman could not have been constructively discharged because Stephens went on leave for medical reasons as soon as the written complaints were filed, and he never returned to his position at COM.

Plaintiffs contend that even though Stephens was no longer working at COM, "Newman knew Dowdy was still on the force, and she knew her psychiatric condition would not tolerate the continued conduct of the remaining Officers Carr and Dowdy."[9] (Pls.' Resp. to Def.'s Mot. Summ. J. at 25–26.) Additionally, Plaintiffs repeat the incidents of ill behavior discussed in the facts that led to the alleged hostile work environment, but such incidents occurred before the written complaints were filed. If COM fixed the problem after the written complaints were filed, then incidents occurring before the filing can hardly be seen as retaliation for filing. Plaintiffs concede that they suffered no further harassment from Stephens following the filing of their written complaints.[10] Newman also concedes that she did not experience any "unwarranted sexual harassment" subsequent to her filing of the written complaint. (Newman Dep. at 146.)

---

[9] Plaintiffs also make a vague allegation about the janitor knowing about Newman's personal information when she went to buy a soda, but they do not provide the Court with a citation to deposition testimony regarding this allegation.

[10] Likewise, the Record indicates that Dowdy ceased harassing co-employees after Wall filed her written complaint.

Plaintiffs argue, despite this evidence, that Newman was constructively discharged because the Supreme Court has instructed that Title VII is expected to "come[] into play before the harassing conduct leads to a nervous breakdown." *Harris*, 510 U.S. at 22, 114 S. Ct. at 370. Newman's summary judgment evidence indicates that her physician has determined that she had reached the "breaking point" and is thus in need of permanent medical treatment; her physician further notes that her condition is directly attributable to the sexual harassment she allegedly endured. (Pls.' Resp. to Def.'s Mot. Summ. J. at 24 & n.71.) While the Court empathizes with Newman's psychological plight, it cannot find that her subjective reaction to the alleged hostile work environment is equivalent to a reasonable person's reaction. The test for a retaliation claim, as recited above, does not inquire whether the plaintiff herself felt compelled to resign; it asks whether a reasonable person in the plaintiff's shoes would feel compelled to resign. Here, Newman filed a written complaint and COM began investigating it promptly. Plaintiffs have not pointed to any deposition testimony in their Response indicating that Newman suffered additional harassment, and particularly not harassment "by the employer calculated to encourage [her] resignation." *Harvill*, 433 F.3d at 440. Thus, Plaintiffs' claim that Newman was constructively discharged fails, and COM's Motion for Summary Judgment regarding Newman's retaliation claim in **GRANTED**.

*2. Saxton*

Plaintiffs claim that COM retaliated against Saxton for filing a written sexual harassment complaint by not interviewing and ultimately "promoting" her when she applied for Stephens's vacated full-time position.[11] COM asserts a legitimate nonretaliatory reason for denial of the

---

[11]Plaintiffs present these allegations as if the full-time position were a promotion. While technically, it more resembles a change in hours, the Court will treat this as an "ultimate employment decision" for argument's sake. *See Green*, 284 F.3d at 657 (defining "adverse

position—promoting a more qualified individual. *See Pineda v. United Parcel Serv.*, 360 F.3d 483, 487 (5th Cir. 2004) ("Once the plaintiff makes a *prima facie* case, 'the burden then shifts to the defendant to demonstrate a legitimate nondiscriminatory purpose for the employment action.'" (quoting *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002))). The burden next shifts back to Plaintiffs, who must show "*some* evidence" that COM's purported reason for promoting the other individual is merely pretext and that, instead, it denied Saxton the promotion in retaliation. *Id.* Plaintiffs have a heavy burden in showing pretext, as they must show that "'but for' the discriminatory purpose," Saxton would have been promoted. *Id.*

Plaintiffs cite deposition testimony in which the Chief responded in the affirmative to Plaintiffs' counsel's question: "Are you the guy that was sort of running the whole thing - - kind of running the show [regarding the promotion decision]?" (Carr Dep. at 34.) The Chief stated that he was "watching *over* the show." *Id.* (emphasis added). Plaintiffs further note that the Chief asked COM's investigator if it was "okay" not to interview Saxton for the full-time position, though Plaintiffs do not cite the testimony establishing this contention. However, the Chief stated in his deposition testimony that he merely "told [the investigator] what the decision of the team was." (Carr Dep. at 47.) Plaintiffs contend that the Chief's alleged inquiry "clearly evidenc[es] some knowledge that denying the interview might have repercussions." (Pls.' Surreply to Def.'s Reply at 6.)

It is uncontroverted that the team selecting Stephens's replacement consisted of six persons: the Chief, two full-time police officers who were not interviewed during the sexual harassment investigation, and three individuals who were not members of the COM police department. Sylvia Chapa ("Chapa"), who was eventually hired for the position, was the overwhelming choice of the

---

employment action" as including only "ultimate employment decisions").

team; Saxton received no votes. While COM admits that Saxton met the minimum requirements for the position, it claims that Chapa was more qualified than Saxton. Plaintiffs claim that Saxton's qualifications exceeded those of the other individuals who were allowed to interview for the position, yet the team failed to allow Saxton an interview. They allege further animus on the part of the Chief by questioning, "[w]hy . . . if Carr was being so fair and unbiased in the interview process for the full time position, did not *at least* Carr cast one vote for Saxton." (Pls.' Resp. to Def.'s Mot. Summ. J. at 26–27 (emphasis in original).) The Court presents a question in response: if the Chief was being fair and unbiased, should he have cast a vote for somebody who he believed to not be as qualified for the position as the other applicants simply because he feared she may file a retaliation complaint?

Unless the differences in qualification "are so apparent as virtually to jump off the page and slap us in the face, . . . judges should be reluctant to substitute our views for those of individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993). In the instant case, Saxton's qualifications do not appear to be clearly superior, or in fact even superior, to the Court. Thus, the Court holds that COM's reason for "promoting" Chapa over Saxton are not pretexual.

Saxton additionally alleges that COM reduced her hours after she filed the written complaint. However, in Plaintiffs' Response, Plaintiffs merely state, "Saxton is ignored, receiving little or no hours." (Pls.' Resp. to Def.'s Mot. Summ. J. at 26.) Plaintiffs do not cite any deposition testimony in support of this statement. COM, however, does present the Court with evidence that Saxton asked for leave for dental problems and family problems and that she went on leave in May 2006 "so that she would not have to work until this lawsuit was concluded." (Def.'s Mot. Summ. J. at 25.) Thus, Plaintiffs' conclusory statement that Saxton received "little or no hours" in retaliation for filing her

15

written complaint is not supported by the summary judgment evidence. Therefore, because Plaintiffs have not met their burden, COM's Motion for Summary Judgment regarding Saxton's retaliation claim in **GRANTED**.

### IV. Conclusions

For the reasons stated above, COM's Motion for Summary Judgment regarding Plaintiffs' hostile work environment claim is **DENIED**. COM's Motion for Summary Judgment regarding Plaintiffs' retaliation claims is **GRANTED**. Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 21st day of November, 2006, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge